## COCIANCICH v. VAZZOLER.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

EVIDENCE—ADMISSIONS—MATTERS OF RECORD.

The rule that admissions of a party are not competent to dispense with record evidence does not apply to exclude admissions of a party as to the existence and contents of an original agreement executed by him and on file in a foreign country, and therefore impossible to produce, where an alleged copy thereof is shown to him, and he acknowledges its correctness.

Appeal from trial term, Kings county.

Action by Luigi Cociancich, as administrator of Maria Vazzoler, deceased, against Cesare Vazzoler. From a judgment on a verdict for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

John Palmieri, for appellant.
James Troy, for respondent.

WILLARD BARTLETT, J. The complaint in this action alleges that on May 25, 1876, the defendant and Maria Cociancich, then a widow, were married at Trieste, in the empire of Austria; that the said Maria then and there delivered to the defendant 4,000 florins, to be returned to her in case of separation, or, upon her death, to her legal representatives, and the defendant received that sum, and in consideration thereof agreed in writing to make restitution of the same to the said Maria in case of their separation, or to her legal representatives in case of her death; that the defendant and the said Maria became residents of the former city of Brooklyn (now the borough of Brooklyn), and about September 22, 1898, the said Maria died intestate, leaving, her surviving, the defendant and three children; that in May, 1894, the defendant abandoned his said wife, and the parties to the marriage separated, and she demanded from him payment and restitution of the money aforesaid, or its equivalent in money of the United States, which the defendant refused to

return; and that, after the death of the said Maria Vazzoler, administration upon her estate was duly granted to the plaintiff. Upon these facts, judgment was demanded for $1,615, which amount is alleged to be the equivalent of the 4,000 florins due from the defendant under the agreement aforesaid. The answer is a denial of all the allegations of the complaint, except those relating to the marriage of the parties, their residence in Brooklyn, the death of the defendant's wife intestate, and the granting of letters of administration to the plaintiff. Upon the issues raised by this answer, the case came to trial. The principal witness called in behalf of the plaintiff was a stepson of the defendant. He testified that his mother and his stepfather separated at Brooklyn in the month of May, 1894, and he narrated a conversation which he heard between the defendant and his mother shortly after their separation. According to the witness, that conversation was as follows:

"My mother then demanded that he give her back this money. My mother said: 'When we got married in Trieste, I gave you my money. Now, I want my money back again. Here is the copy of the original agreement;' and she gave him that paper which you have in your hand. I can tell it, sir, because I had it in my possession long enough. (Looking at paper.) Yes, sir: 'Here is the copy of the original agreement.' He looked at it and read it. I couldn't exactly say what he read, but I know he had it in his hands. He said: 'It is the copy. I haven't got the money. I will give it to you when I have it.'"

The paper of which the witness spoke as having been identified by the defendant was then offered in evidence. It was objected to by counsel for the defendant on the ground that it was not certified in the manner required by the Code of Civil Procedure. The objection was overruled, and the defendant excepted. This exception was the only one in the case, and presents the only question to be determined upon this appeal.

The defendant, being called as a witness in his own behalf, denied that he had ever seen the paper before, or that his wife had ever asked him to pay her 4,000 florins, or that he had ever received 4,000 florins from her, or that he ever signed a paper with her in a notary's office in Austria. The plaintiff recovered a verdict for the full amount claimed, and the sole question for our determination upon the present appeal is whether the copy of the Trieste agreement was properly admitted in evidence. If the doctrine of the leading English case on this subject is adopted in full, there can be no doubt about its admissibility. Slatterie v. Pooley, 6 Mees. & W. 664. In that case it was held that the admission of a party was always receivable in evidence against him, even though such admissions might involve what must necessarily be contained, in some deed or writing. In the editor's note on this point in the fifteenth edition of Greenleaf on Evidence, however, it is stated that the New York courts adopt a different view from that of the court of exchequer in Slatterie v. Pooley, and reference is made to Jenner v. Joliffe, 6 Johns. 9; Hasbrouck v. Baker, 10 Johns. 248; and Canal Co. v. Hathaway, 8 Wend. 480. These three cases are cited upon the appellant's brief as authorities against the admissibility of the copy of the Trieste agreement, even in the light of the testimony that the defendant admitted it to be a copy. It becomes nec-

essary, therefore, to examine these cases, and ascertain precisely what points they do decide. In Jenner v. Joliffe one of the questions at issue was whether certain timber which had been lost in a storm in Quebec was held at the time under an attachment sued out by the defendant. The only evidence as to the existence of the attachment was testimony that the plaintiff had been heard to say several times that his raft had been attached by a bailiff at the instance of the defendant. No copy of the process was produced, nor was there any question before the court in regard to any copy. The court, however, expressed the opinion that the confession of the plaintiff was not sufficient to establish the fact of the attachment. "It was matter of record," said Mr. Justice Thompson, "and capable of higher and more satisfactory proof. The confessions of a party have never been considered competent evidence of the execution of a specialty; and much less ought they to be admitted as proof of matters of record. The seizure under the attachment was set up by way of justification, and the defendant was bound to furnish the highest evidence the nature of the case would admit, of the existence and legality of the attachment." No attention seems to have been called to the fact that the attachment itself in that case was issued in a foreign jurisdiction, where the original papers must have remained. It is obvious that some sort of authenticated copy thereof would have been competent evidence, and we do not see why the testimony of a person who had actually compared a copy with the original attachment would not have sufficed to render such copy admissible. The statement by Mr. Justice Thompson that the confessions of a party had never been considered competent evidence of the execution of a specialty plainly referred to oral admissions made without reference to anything purporting to be a copy of the specialty in the hands of a party at the time the admission was made. In Hasbrouck v. Baker it was held that parol evidence that the defendant had confessed that he had been subpœnaed was not sufficient evidence of the fact where the plaintiff had the subpœna in his possession and did not produce it. This point has no possible application to any question arising on the present appeal. In Canal Co. v. Hathaway the plaintiff relied upon admissions by the defendant, made out of court, to prove that the plaintiffs were a corporate body, duly constituted by law; and the court held that a copy of the charter of the company, properly authenticated, should have been produced, and nothing short of this was admissible unless the absence of such record evidence was legally accounted for. It is not necessary to question the correctness of the proposition thus enunciated. Mr. Justice Nelson, however, in the case cited, went further, and stated:

"It may be laid down, I think, as an undeniable proposition, that the admissions of a party are competent evidence against himself only in cases where parol evidence would be admissible to establish the same facts, or, in other words, where there is not, in the judgment of the law, higher and better evidence in existence to be produced."

This rule can only be accepted with certain limitations, and cannot apply, we think, to exclude the admissions of a party as to the

existence and contents of an original paper on file in a foreign coun-
try, where an alleged copy of that paper is shown to him, and he
acknowledges its correctness.

Another case relied upon by the appellant is Sherman v. People,
13 Hun, 575. There the plaintiff in error was charged with having
obtained property by the false pretense that he was the owner of a
house and lot free from incumbrance, and it was held that the trial
court erred in receiving evidence of the admissions of the defendant
that the house and lot in question were incumbered by mortgage.
"The existence of the incumbrance," said Smith, J., writing for the
general term, "was a material fact for the prosecution to prove, and
the best evidence was the mortgage itself, the record, or a certified
copy of the record. Without accounting for the absence of these,
secondary evidence was not admissible." The facts in that case
bear no analogy to those in the present action. The original docu-
ment, the contents of which were here sought to be proved, was filed
in a foreign country. This distinctly appeared from the statement
of counsel for the defendant that the original agreement between
the parties was a public record at Trieste, in Austria. Its produc-
tion in the courts of this country could not be procured, so that sec-
ondary evidence as to its contents must necessarily have been re-
ceived, if any proof at all was to be made on the subject. In the
Sherman Case, above cited, the prosecution relied simply upon the
oral statement of the defendant that a mortgage existed upon his
house and lot. That mortgage, if there was one, was on record in
a public office of this state, and the record could readily have been
proved. No paper purporting to be a copy of the mortgage was
produced for the defendant to verify. In the case at bar, however,
the testimony showed that a paper purporting to be a copy of the
agreement between the defendant and his wife, on file in Trieste,
had been shown to the defendant, and that he had pronounced it to
be a copy thereof, and had furthermore promised at the time the
paper was shown to him that he would pay his wife the money (evi-
dently meaning the sum mentioned therein) when he should have it.
The absence of the original agreement was accounted for by the ad-
mission of the defendant's counsel that it was in Trieste, and the
alleged copy thereof, produced by the plaintiff, was shown to have
been acknowledged by the defendant to be a copy. There is noth-
ing in the opinion in the Sherman Case which holds that such evi-
dence would be incompetent. Indeed, if admissions against the in-
terest of the party making them are to be received at all, we are un-
able to perceive any good reason for the exclusion of such an ad-
mission as was relied upon in this case. The paper shown to the
defendant was claimed to be a veritable copy of the instrument
which he had executed in Austria. By its exhibition to him, and
the opportunity which he was afforded to read it, his attention was
called to the very terms of the instrument; and his subsequent dec-
laration that it was a c. y was not merely an admission of its legal
effect, or a confessio juris, but a confessio facti, or an admission of
the fact that he had executed precisely such document, containing
precisely such provisions as were stated in the paper before him.

It is said that the reception of such testimony is dangerous, on account of the ease with which testimony may be fabricated to show such admissions; but this objection goes to the care with which evidence of this character should be scrutinized, and the weight which should be given to·it, rather than to its competency. There can be no doubt, we think, that if it was shown to the satisfaction of a jury that the defendant had read through the entire complaint in this action after it was served upon him, and had stated in the presence of a witness 'that every allegation therein was true, and that he would pay the money which the plaintiff demanded, as soon as he had it, such testimony would suffice to sustain a verdict for the plaintiff. If so, it seems equally clear that the defendant's admission as to the correctness of the copy of the Trieste agreement which was shown to him not only rendered the copy itself competent evidence, but sufficed to charge him with liability upon his promise to repay the money which he received from his wife at the time of their marriage.

The judgment should be affirmed, with costs. All concur.